**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Plaintiff,

-vs.-

CAP 41 W 184 PROPERTY OWNER LLC, CAP 151 W 228 PROPERTY OWNER LLC, CAP 2291 UNIVERSE ST PROPERTY OWNER LLC, CAP 2322 GRAND AVE PROPERTY OWNER LLC, MICHAEL RUBIN, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, ASPEN SPECIALTY INSURANCE COMPANY, and JOHN DOE #1 THROUGH JOHN DOE # 76, inclusive, the names of the last 76 defendants being fictitious, the true names of said defendants being unknown to plaintiff, it being intended to designate any occupants or tenants of the mortgaged premises who are in default in the payment of rent for which a proceeding is now pending by the mortgagor and/or other persons or parties having or claiming an interest in or lien upon the mortgaged premises subordinate to that of the mortgagee, if the aforesaid individual defendants are living, and if any or all of said individual defendants be dead, their heirs at law, next of kin, distributees, executors, administrators, trustees, committees, devisees, legatees and the assignees, lienors, creditors, successors in interest of them, and generally all persons having or claiming under, by, through or against the said defendants named as a class, any right, title or interest in or lien upon the premises described in the complaint herein,

Defendants.

No. ______________________

**COMPLAINT**

Plaintiff Federal National Mortgage Association ("Plaintiff" or "Fannie Mae"), by and through its undersigned counsel, Akin Gump Strauss Hauer & Feld LLP, for its complaint against Defendants CAP 41 W 184 Property Owner LLC, CAP 151 W 228 Property Owner LLC, CAP 2291 Universe St Property Owner LLC, CAP 2322 Grand Ave Property Owner LLC, Michael Rubin, Aspen Specialty Insurance Company, the New York City Environmental Control Board, and John Doe #1 through John Doe #76 (the "Complaint") alleges as follows:

## NATURE OF THE ACTION

1. This is a commercial mortgage foreclosure action on four multifamily properties located at 41 W 184th Street, Bronx, New York 10468 (the "West 184th St Property"), 151 W 228th Street, Bronx, New York 10463 (the "West 228th St Property"), 2291 University Avenue, Bronx, New York 10468 (the "University Ave Property"), and 2322 Grand Avenue, Bronx, New York 10468 (the "Grand Ave Property," and collectively, the "Properties"). Plaintiff's mortgage on the West 184th St Property secures a loan in the principal amount of $1,470,000.00, which has been in default since November 1, 2025. Plaintiff's mortgage on the West 228th St Property secures a loan in the principal amount of $2,004,000.00, which has been in default since November 1, 2025. Plaintiff's mortgage on the University Ave Property secures a loan in the principal amount of $1,261,000.00, which has been in default since November 1, 2025. Plaintiff's mortgage on the Grand Ave Property secures a loan in the principal amount of $1,947,000.00, which has been in default since November 1, 2025. With this action, Plaintiff seeks the appointment of a receiver, foreclosure of the Properties as the lawful remedy under the governing loan documents, foreclosure of all junior liens, and a money judgment against CAP 41 W 184 Property Owner LLC, CAP 151 W 228 Property Owner LLC, CAP 2291 Universe St Property Owner LLC, CAP 2322 Grand Ave Property Owner LLC, and Michael Rubin.

## PARTIES

2. Plaintiff Fannie Mae is a federally chartered corporation organized and existing under the laws of the United States, 12 U.S.C. §1716 *et seq*., with its principal place of business in Washington, D.C., and with offices located at Midtown Center, 1100 15th Street NW, Washington, D.C. 20005.

3. Plaintiff is the current owner and holder of the Loan Documents (as such term is defined herein). Fannie Mae is a government-sponsored enterprise and a federally chartered entity that Congress created to enhance the nation's housing-finance market. Under its federal statutory charter, Fannie Mae has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality, affordable rental housing. Fannie Mae is operating under the conservatorship of the Federal Housing Finance Agency (the "FHFA"), which is an independent agency of the United States created in 2008 to supervise certain Government Sponsored Enterprises, including Fannie Mae. *See* 12 U.S.C. § 4511 *et seq*. Among other powers, Congress granted the director of the FHFA the authority to place Fannie Mae into conservatorship under certain statutorily defined conditions, which the director did in 2008. As conservator, the FHFA has broad statutory powers, including the powers to preserve and conserve Fannie Mae's assets and property, and to collect obligations due to Fannie Mae. The FHFA's ability to exercise its statutory powers and functions as conservator is protected by federal law. *See, e.g.*, 12 U.S.C. § 4617(f).

4. Defendants CAP 41 W 184 Property Owner LLC, CAP 151 W 228 Property Owner LLC, CAP 2291 Universe St Property Owner LLC, and CAP 2322 Grand Ave Property Owner LLC (collectively, the "Borrowers") are New York limited liability companies located at 1 Cedarlawn Avenue, Lawrence, NY 11559.

5. Defendant Michael Rubin ("Guarantor," and together with the Borrowers, the "Borrower-Defendants") is an individual currently residing in New York.

6. Defendant New York City Environmental Control Board ("ECB"), also known as the Office of Administrative Trials and Hearings, is a New York City agency with an office located at 66 John Street, 10th Floor, New York, New York 10038.

7. Defendant Aspen Specialty Insurance Company ("Aspen") is an insurance company headquartered in North Dakota and with its principal place of business in Connecticut.

8. Defendants "JOHN DOE #1-76" are unknown persons or entities joined as party defendants because they may be tenants and persons in possession of the Properties or have some interest in and to the Properties (including that of judgment creditors) inferior and subordinate to that of Plaintiff or may be persons who hold or have collected the rents, issues, and profits relating to or arising from the Properties.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 in value, exclusive of interests and costs, and is between citizens of different states.

10. For purposes of diversity jurisdiction, Plaintiff is a citizen of Washington, D.C. 12 U.S.C. §1717(a)(2)(B).

11. For purposes of diversity jurisdiction, Defendants CAP 41 W 184 Property Owner LLC, CAP 151 W 228 Property Owner LLC, CAP 2291 Universe St Property Owner LLC, and CAP 2322 Grand Ave Property Owner LLC are not citizens of Washington, D.C. because the

members of these LLCs, and any members of such members (or members of such members, and so on), are citizens of Florida, Maryland, New Jersey, New York, and Texas.[1]

12. For purposes of diversity jurisdiction, Defendant Michael Rubin is a citizen of New York based on his domicile in New York.

13. For purposes of diversity jurisdiction, Defendant ECB is a citizen of the state of New York.

14. For the purposes of diversity jurisdiction, Defendant Aspen is a citizen of North Dakota and Connecticut based on its state of incorporation and principal place of business, respectively.

15. This Court has personal jurisdiction over Defendants CAP 41 W 184 Property Owner LLC, CAP 151 W 228 Property Owner LLC, CAP 2291 Universe St Property Owner LLC, and CAP 2322 Grand Ave Property Owner LLC because, *inter alia*, they agreed to submit to personal jurisdiction in New York State according to the terms of their respective Notes, Loan Agreements, and Mortgage Agreements (defined *infra*).

16. This Court has personal jurisdiction over Defendant Michael Rubin because, *inter alia*, he agreed to submit to personal jurisdiction in New York State according to the terms of each Property's respective Guaranty (defined *infra*).

17. This Court has personal jurisdiction over Defendant ECB because it is a New York City agency with a principal place of business in New York State.

---

[1] *See* Rule 7.1 Corporate Disclosure Statements, filed contemporaneously with this Complaint.

18. This Court has personal jurisdiction over Defendant Aspen because it does business in New York at an address of 590 Madison Avenue, 7th Floor, New York, NY 10022 and specifically obtained and filed a judgment against the 228th St Property in New York state court.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the Properties that are the subject of this action are located in the Southern District of New York.

20. Venue is also proper pursuant to 28 U.S.C. § 1391, because this dispute arises out of the terms of agreements signed by the parties that are governed by New York law and contain forum selection clauses designating this Court as a proper venue.

## FACTUAL ALLEGATIONS

### I. The Mortgage and the Loan Documents

A. The West 184th St Property

21. On or about July 26, 2022, CAP 41 W 184 Property Owner LLC (the "West 184th St Borrower") executed an Amended and Restated Multifamily Note (the "West 184th St Note") for the benefit of NewPoint Real Estate Capital LLC ("NewPoint"), the original lender under the West 184th St Note. Under the terms of the West 184th St Note, the West 184th St Borrower agreed to pay to the holder of the Note (the "Lender") the sum of $1,470,000.00 plus interest. A true and correct copy of the West 184th St Note is annexed as **Exhibit 1** and incorporated herein.

22. On or about July 26, 2022, the West 184th St Borrower and NewPoint entered into a Multifamily Loan and Security Agreement (the "West 184th St Loan Agreement"). A true and correct copy of the West 184th St Loan Agreement is annexed as **Exhibit 2** and incorporated herein. Under Schedule 2 of the West 184th St Loan Agreement, the West 184th St Borrower was required to make monthly payments on the loan to the Lender on the first day of each month from September 1, 2022, through August 1, 2032 (the "West 184th St Monthly Payments").

23. In order to secure its indebtedness under the West 184th St Note, on or about July 26, 2022, the West 184th St Borrower simultaneously executed a Consolidation, Extension, and Modification Agreement dated as of July 26, 2022 (the "West 184th St Consolidation Agreement") which attached thereto as Exhibit C a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "West 184th St Mortgage Agreement"). A true and correct copy of the West 184th St Consolidation Agreement attaching the West 184th St Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on August 5, 2022, File No. 2022000310115, is annexed as **Exhibit 3** and incorporated herein. Under the West 184th St Mortgage Agreement, the West 184th St Borrower mortgaged to NewPoint the West 184th St Property, including, among other things, the structures and buildings upon it, the leases on the West 184th St Property, and the rents and income received on the West 184th St Property (the "West 184th St Mortgage").

24. On July 26, 2022, Michael Rubin executed a Guaranty of Non-Recourse Obligations to and for the benefit of NewPoint (the "West 184th St Guaranty"). A true and correct copy of the West 184th St Guaranty is annexed as **Exhibit 4** and incorporated herein.

25. Collectively, the West 184th St Note, the West 184th St Loan Agreement, the West 184th St Mortgage Agreement, the West 184th St Guaranty, and all attachments thereto and assignments thereof are referred to as the "West 184th St Loan Documents."

26. Under Section 3 of the West 184th St Mortgage Agreement, the West 184th St Borrower executed an Assignment of Rents (the "West 184th St Assignment of Rents") to the Lender. Under the West 184th St Assignment of Rents, the West 184th St Borrower absolutely and unconditionally assigned and transferred to the Lender all "Rents," as that term is defined in the West 184th St Mortgage Agreement. In return, the Lender granted the West 184th St Borrower a

revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of the Lender, to apply all Rents to pay the installments of interest and principal due and payable under the West 184th St Note and the other amounts due and payable under the West 184th St Loan Documents, and to pay the costs and expenses of managing and maintaining the West 184th St Property. The West 184th St Borrower was further authorized to retain any remaining Rents.

27. Upon the occurrence of an Event of Default (*see* Section 14.01 of the West 184th St Loan Agreement) under the West 184th St Loan Documents, the West 184th St Borrower's license to collect Rents automatically terminates, and the Lender is entitled to receive all Rents as they become due and payable. To that end, under Section 3(c) of the Mortgage Agreement, the West 184th St Borrower agreed to pay any such Rents over to the Lender.

28. The West 184th St Property is located at 41 W 184th Street, Bronx, New York 10468, and is more particularly described as follows:

> ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Bronx, City and State of New York, being more particularly bounded and described as follows:
>
> BEGINNING at the corner, formed by the intersection of the easterly side of Grand Avenue with the northerly side of 184th Street;
>
> RUNNING THENCE northerly along said easterly side of Grand Avenue, 48 feet;
>
> THENCE easterly parallel with the northerly side of 184th street and for part of the way through a party wall, 100 feet to the center line of the block;
>
> THENCE southerly along the center line of the block 48 feet to the northerly side of 184th Street;
>
> THENCE westerly along the northerly side of 184th Street, 100 feet to the corner aforesaid, to the point or place of BEGINNING.

B. The West 228th St Property

29. On or about July 26, 2022, CAP 151 W 228 Property Owner LLC (the "West 228th St Borrower") executed an Amended and Restated Multifamily Note (the "West 228th St Note")

for the benefit of NewPoint, the original lender under the West 228th St Note. Under the terms of the West 228th St Note, the West 228th St Borrower agreed to pay to the Lender the sum of $2,004,000.00 plus interest. A true and correct copy of the West 228th St Note is annexed as **Exhibit 5** and incorporated herein.

30. On or about July 26, 2022, the West 228th St Borrower and NewPoint entered into a Multifamily Loan and Security Agreement (the "West 228th St Loan Agreement"). A true and correct copy of the West 228th St Loan Agreement is annexed as **Exhibit 6** and incorporated herein. Under Schedule 2 of the West 228th St Loan Agreement, the West 228th St Borrower was required to make monthly payments on the loan to the Lender on the first day of each month from September 1, 2022, through August 1, 2032 (the "West 228th St Monthly Payments").

31. In order to secure its indebtedness under the West 228th St Note, on or about July 26, 2022, the West 228th St Borrower simultaneously executed a Consolidation, Extension, and Modification Agreement dated as of July 26, 2022 (the "West 228th St Consolidation Agreement") which attached thereto as Exhibit C a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "West 228th St Mortgage Agreement"). A true and correct copy of the West 228th St Consolidation Agreement attaching the West 228th St Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on August 5, 2022, File No. 2022000310120, is annexed as **Exhibit 7** and incorporated herein. Under the West 228th St Mortgage Agreement, the West 228th St Borrower mortgaged to NewPoint the West 228th St Property, including, among other things, the structures and buildings upon it, the leases on the West 228th St Property, and the rents and income received on the West 228th St Property (the "West 228th St Mortgage").

32. On July 26, 2022, Michael Rubin executed a Guaranty of Non-Recourse Obligations to and for the benefit of NewPoint (the "West 228th St Guaranty"). A true and correct copy of the West 228th St Guaranty is annexed as **Exhibit 8** and incorporated herein.

33. Collectively, the West 228th St Note, the West 228th St Loan Agreement, the West 228th St Mortgage Agreement, the West 228th St Guaranty, and all attachments thereto and assignments thereof are referred to as the "West 228th St Loan Documents."

34. Under Section 3 of the West 228th St Mortgage Agreement, the West 228th St Borrower executed an Assignment of Rents (the "West 228th St Assignment of Rents") to the Lender. Under the West 228th St Assignment of Rents, the West 228th St Borrower absolutely and unconditionally assigned and transferred to the Lender all "Rents," as that term is defined in the West 228th St Mortgage Agreement. In return, the Lender granted the West 228th St Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of the Lender, to apply all Rents to pay the installments of interest and principal due and payable under the West 228th St Note and the other amounts due and payable under the West 228th St Loan Documents, and to pay the costs and expenses of managing and maintaining the West 228th St Property. The West 228th St Borrower was further authorized to retain any remaining Rents.

35. Upon the occurrence of an Event of Default (*see* Section 14.01 of the West 228th St Loan Agreement) under the West 228th St Loan Documents, the West 228th St Borrower's license to collect Rents automatically terminates, and the Lender is entitled to receive all Rents as they become due and payable. To that end, under Section 3(c) of the Mortgage Agreement, the West 228th St Borrower agreed to pay any such Rents over to the Lender.

36. The West 228th St Property is located at 151 W 228th Street, Bronx, New York 10463 and is more particularly described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, designated on the Tax Map of the City of New York for such Borough as Block 2215 Lot 197, as said Tax Map was on August 29, 1978, said premises being presently known as the street number 151 West 228th Street and being further bounded and described as follows:

BEGINNING at the corner formed by the intersection of the westerly side of Marble Hill Road with the northerly side of West 228th Street;

RUNNING THENCE westerly along the northerly side of West 228th Street at an interior angle thereto of 82 degrees 2 minutes 16 second a distance of 45.00 feet;

THENCE northerly from West 228th Street at a right angle thereto, a distance of 90.00 feet;

THENCE easterly and generally parallel with the northerly side of West 228th Street a distance of 32.41 feet to a point on the westerly side of Marble Hill Avenue;

RUNNING THENCE southerly a distance of 90.88 feet along the westerly side of Marble Hill Avenue to the point or place of BEGINNING.

C. The University Ave Property

37. On or about July 26, 2022, CAP 2291 Universe St Property Owner LLC (the "University Ave Borrower") executed an Amended and Restated Multifamily Note (the "University Ave Note") for the benefit of NewPoint, the original lender under the University Ave Note. Under the terms of the University Ave Note, the University Ave Borrower agreed to pay to the Lender the sum of $1,261,000.00 plus interest. A true and correct copy of the University Ave Note is annexed as **Exhibit 9** and incorporated herein.

38. On or about July 26, 2022, the University Ave Borrower and NewPoint entered into a Multifamily Loan and Security Agreement (the "University Ave Loan Agreement"). A true and correct copy of the University Ave Loan Agreement is annexed as **Exhibit 10** and incorporated herein. Under Schedule 2 of the University Ave Loan Agreement, the University Ave Borrower was required to make monthly payments on the loan to the Lender on the first day of each month from September 1, 2022, through August 1, 2032 (the "University Ave Monthly Payments").

39. In order to secure its indebtedness under the University Ave Note, on or about July 26, 2022, the University Ave Borrower simultaneously executed a Consolidation, Extension, and Modification Agreement dated as of July 26, 2022 (the "University Ave Consolidation Agreement") which attached thereto as Exhibit C a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "University Ave Mortgage Agreement"). A true and correct copy of the University Ave Consolidation Agreement attaching the University Ave Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on August 5, 2022, File No. 2022000310146, is annexed as **Exhibit 11** and incorporated herein. Under the University Ave Mortgage Agreement, the University Ave Borrower mortgaged to NewPoint the University Ave Property, including, among other things, the structures and buildings upon it, the leases on the University Ave Property, and the rents and income received on the University Ave Property (the "University Ave Mortgage").

40. On July 26, 2022, Michael Rubin executed a Guaranty of Non-Recourse Obligations to and for the benefit of NewPoint (the "University Ave Guaranty"). A true and correct copy of the University Ave Guaranty is annexed as **Exhibit 12** and incorporated herein.

41. Collectively, the University Ave Note, the University Ave Loan Agreement, the University Ave Mortgage Agreement, the University Ave Guaranty, and all attachments thereto and assignments thereof are referred to as the "University Ave Loan Documents."

42. Under Section 3 of the University Ave Mortgage Agreement, the University Ave Borrower executed an Assignment of Rents (the "University Ave Assignment of Rents") to the Lender. Under the University Ave Assignment of Rents, the University Ave Borrower absolutely and unconditionally assigned and transferred to the Lender all "Rents," as that term is defined in the University Ave Mortgage Agreement. In return, the Lender granted the University Ave

Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of the Lender, to apply all Rents to pay the installments of interest and principal due and payable under the University Ave Note and the other amounts due and payable under the University Ave Loan Documents, and to pay the costs and expenses of managing and maintaining the University Ave Property. The University Ave Borrower was further authorized to retain any remaining Rents.

43. Upon the occurrence of an Event of Default (*see* Section 14.01 of the University Ave Loan Agreement) under the University Ave Loan Documents, the University Ave Borrower's license to collect Rents automatically terminates, and the Lender is entitled to receive all Rents as they become due and payable. To that end, under Section 3(c) of the Mortgage Agreement, the University Ave Borrower agreed to pay any such Rents over to the Lender.

44. The University Ave Property is located at 2291 University Avenue, Bronx, New York 10468, and is more particularly described as follows:

> ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Bronx, City and State of New York, designated on the Tax Map of the City of New York being more particularly bounded and described as follows:
>
> BEGINNING at a point on the westerly side of University Avenue, formerly Aquaduct Avenue, distant 471 and 81/100th feet northerly from the corner formed by the intersection of the westerly side of University Avenue with the northerly side of 183rd Street measured along the westerly side of University Avenue;
>
> RUNNING THENCE northerly along the westerly side of University Avenue, 42 and 19/100ths feet;
>
> THENCE westerly at right angles with the westerly side of University Avenue, 100 feet;
>
> THENCE southerly parallel with the westerly side of University Avenue 42 and 19/100ths feet;
>
> THENCE easterly at right angles with the westerly side of University Avenue and part of the distance through a party wall 100 feet to the point or place of BEGINNING.

D. The Grand Ave Property

45. On or about July 26, 2022, CAP 2322 Grand Ave Property Owner LLC (the "Grand Ave Borrower") executed an Amended and Restated Multifamily Note (the "Grand Ave Note") for the benefit of NewPoint, the original lender under the Grand Ave Note. Under the terms of the Grand Ave Note, the Grand Ave Borrower agreed to pay to the Lender the sum of $1,947,000.00 plus interest. A true and correct copy of the Grand Ave Note is annexed as **Exhibit 13** and incorporated herein.

46. On or about July 26, 2022, the Grand Ave Borrower and NewPoint entered into a Multifamily Loan and Security Agreement (the "Grand Ave Loan Agreement"). A true and correct copy of the Grand Ave Loan Agreement is annexed as **Exhibit 14** and incorporated herein. Under Schedule 2 of the Grand Ave Loan Agreement, the Grand Ave Borrower was required to make monthly payments on the loan to the Lender on the first day of each month from September 1, 2022, through August 1, 2032 (the "Grand Ave Monthly Payments").

47. In order to secure its indebtedness under the Grand Ave Note, on or about July 26, 2022, the Grand Ave Borrower simultaneously executed a Consolidation, Extension, and Modification Agreement dated as of July 26, 2022 (the "Grand Ave Consolidation Agreement") which attached thereto as Exhibit C a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "Grand Ave Mortgage Agreement"). A true and correct copy of the Grand Ave Consolidation Agreement attaching the Grand Ave Mortgage Agreement, with proof of recording in the New York City Department of Finance Office of the City Register on August 5, 2022, File No. 2022000310150, is annexed as **Exhibit 15** and incorporated herein. Under the Grand Ave Mortgage Agreement, the Grand Ave Borrower mortgaged to NewPoint the Grand Ave Property, including, among other things, the structures and

buildings upon it, the leases on the Grand Ave Property, and the rents and income received on the Grand Ave Property (the "Grand Ave Mortgage").

48. On July 26, 2022, Michael Rubin executed a Guaranty of Non-Recourse Obligations to and for the benefit of NewPoint (the "Grand Ave Guaranty"). A true and correct copy of the Grand Ave Guaranty is annexed as **Exhibit 16** and incorporated herein.

49. Collectively, the Grand Ave Note, the Grand Ave Loan Agreement, the Grand Ave Mortgage Agreement, the Grand Ave Guaranty, and all attachments thereto and assignments thereof are referred to as the "Grand Ave Loan Documents."

50. Under Section 3 of the Grand Ave Mortgage Agreement, the Grand Ave Borrower executed an Assignment of Rents (the "Grand Ave Assignment of Rents") to the Lender. Under the Grand Ave Assignment of Rents, the Grand Ave Borrower absolutely and unconditionally assigned and transferred to the Lender all "Rents," as that term is defined in the Grand Ave Mortgage Agreement. In return, the Lender granted the Grand Ave Borrower a revocable license to collect and receive all Rents, to hold all Rents in trust for the benefit of the Lender, to apply all Rents to pay the installments of interest and principal due and payable under the Grand Ave Note and the other amounts due and payable under the Grand Ave Loan Documents, and to pay the costs and expenses of managing and maintaining the Grand Ave Property. The Grand Ave Borrower was further authorized to retain any remaining Rents.

51. Upon the occurrence of an Event of Default (*see* Section 14.01 of the Grand Ave Loan Agreement) under the Grand Ave Loan Documents, the Grand Ave Borrower's license to collect Rents automatically terminates, and the Lender is entitled to receive all Rents as they become due and payable. To that end, under Section 3(c) of the Mortgage Agreement, the Grand Ave Borrower agreed to pay any such Rents over to the Lender.

52. The Grand Ave Property is located at 2322 Grand Avenue, Bronx, New York 10468, and is more particularly described as follows:

> ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Bronx, County of Bronx, City and state of New York, designated on the Tax Map of the City of New York being more particularly described as follows;
>
> BEGINNING at a point on the easterly side of Grand Avenue distant 203 feet northerly from the corner formed by the intersection of the said easterly side of Grand Avenue and the northerly side of North Street;
>
> RUNNING THENCE Easterly parallel with the northerly side of North Street, and part of the way through a party wall, 100 feet;
>
> THENCE northerly parallel with the easterly side of Grand Avenue, 48 feet;
>
> THENCE westerly again and parallel with the northerly side of North Street and part of the way through another party wall, 100 feet to the easterly side of Grand Avenue;
>
> THENCE southerly along said easterly side of Grand Avenue, 48 feet to a point or place of BEGINNING.

53. The terms of the West 184th St Loan Documents, West 228th St Loan Documents, University Ave Loan Documents, and Grand Ave Loan Documents are substantially similar in substance and form, and collectively, constitute the "Loan Documents." Each component of the West 184th St, West 228th St, University Ave, and Grand Ave Loan Documents, are collectively the "Notes," "Guaranties," "Mortgages," "Mortgage Agreements," and "Loan Agreements."

## II. **Personal Liability of Borrowers and Rubin**

54. Under Section 3.02(a) of the Loan Agreements, the Borrowers agreed to be held personally liable to the Lender "for the repayment of a portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of" certain enumerated items listed therein. Exs. 2, 6, 10, 14.

55. Among the items for which the Borrowers agreed to accept personal liability was their failure to pay the Lender, upon demand after an Event of Default, all Rents (*see* Section

3.02(a)(1) of the Loan Agreements) to which the Lender is entitled under Section 3(a) of the Mortgage Agreements and the amount of all security deposits collected by the Borrowers from tenants then in residence. *Id.*; *see* Mortgage Agreements, Exs. 3, 7, 11, 15.

56. Under Section 3.02(b) of the Loan Agreements, the Borrowers agreed to be liable to the Lender for the repayment of all the indebtedness due under the Loan Documents, and that the mortgage loan would be fully recourse to the Borrowers, upon the occurrence of certain events, including among other things, a bankruptcy filing by the Borrowers and a "Transfer," as such term is defined in the Loan Agreements that is not permitted under the Loan Documents. Exs. 2, 6, 10, 14.

57. Under Section 3.03 of the Loan Agreements, the Borrowers agreed to be "personally and fully liable to [the] Lender" for their "indemnity obligations under Section 13.01(e) of [the] Loan Agreement, the Environmental Indemnity Agreement, and any other express indemnity obligations provided by Borrower under any Loan Document." *Id.*

58. Under the Guaranties, Rubin "guarantees to [the] Lender the full and prompt payment and performance when due . . . of all amounts, obligations, and liabilities owed to [the] Lender under Article 3 . . . of the Loan Agreement . . . and all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by [the] Lender in enforcing its rights under th[e] Guaranty." Exs. 4, 8, 12, 16.

## III. Assignment of the Loan Documents to Plaintiff

59. On July 26, 2022, NewPoint assigned the Loan Documents to Fannie Mae.

60. On July 26, 2022, NewPoint assigned the West 184th St Mortgage Agreement and Note to Plaintiff (the "West 184th St Mortgage and Note Assignment") in a written Assignment of Security Instrument duly recorded in the Office of the City Register of the City of New York, under

Control Number 2022000310117 on August 5, 2022. A true and correct copy of the West 184th St Mortgage and Note Assignment is annexed as **Exhibit 17** and incorporated herein.

61. Plaintiff is in possession of the original West 184th St Note, indorsed in blank, which is attached hereto as Exhibit 1. By virtue of Plaintiff's possession of the original West 184th St Note, as well as the West 184th St Mortgage and Note Assignment, Plaintiff became, and is still, the mortgagee on and owner and holder of the West 184th St Note and West 184th St Mortgage Agreement.

62. On or about July 26, 2022, NewPoint assigned certain "Collateral Agreements and Other Loan Documents" related to the West 184th St Property to Plaintiff (the "West 184th St Collateral Agreements Assignment"), which assigned agreements including the West 184th St Loan Agreement, the West 184th St Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan." A true and correct copy of the West 184th St Collateral Agreements Assignment is annexed as **Exhibit 18** and incorporated herein.

63. On July 26, 2022, NewPoint assigned the West 228th St Mortgage Agreement and West 228th St Note to Plaintiff (the "West 228th St Mortgage and Note Assignment") in a written Assignment of Security Instrument duly recorded in the Office of the City Register of the City of New York, under Control Number 2022000310122 on August 5, 2022. A true and correct copy of the West 228th St Mortgage and Note Assignment is annexed as **Exhibit 19** and incorporated herein.

64. Plaintiff is in possession of the original West 228th St Note, indorsed in blank, which is attached hereto as Exhibit 5. By virtue of Plaintiff's possession of the original West 228th St Note, as well as the West 228th St Mortgage and Note Assignment, Plaintiff became, and is still,

the mortgagee on and owner and holder of the West 228th St Note and the West 228th St Mortgage Agreement.

65. On or about July 26, 2022, NewPoint assigned certain "Collateral Agreements and Other Loan Documents" related to the West 228th St Property to Plaintiff (the "West 228th St Collateral Agreements Assignment"), which assigned agreements including the West 228th St Loan Agreement, the West 228th St Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan." A true and correct copy of the West 228th St Collateral Agreements Assignment is annexed as **Exhibit 20** and incorporated herein.

66. On July 26, 2022, NewPoint assigned the University Ave Mortgage Agreement and University Ave Note to Plaintiff (the "University Ave Mortgage and Note Assignment") in a written Assignment of Security Instrument duly recorded in the Office of the City Register of the City of New York, under Control Number 2022000310147 on August 5, 2022. A true and correct copy of the University Ave Mortgage and Note Assignment is annexed as **Exhibit 21** and incorporated herein.

67. Plaintiff is in possession of the original University Ave Note, indorsed in blank, which is attached hereto as Exhibit 9. By virtue of Plaintiff's possession of the original University Ave Note, as well as the University Ave Mortgage and Note Assignment, Plaintiff became, and is still, the mortgagee on and owner and holder of the University Ave Note and the University Ave Mortgage Agreement.

68. On or about July 26, 2022, NewPoint assigned certain "Collateral Agreements and Other Loan Documents" related to the University Ave Property to Plaintiff (the "University Ave Collateral Agreements Assignment"), which assigned agreements including the University Ave Loan Agreement, the University Ave Guaranty, and "[a]ny other documents executed in connection

with the Mortgage Loan." A true and correct copy of the University Ave Collateral Agreements Assignment is annexed as **Exhibit 22** and incorporated herein.

69. On July 26, 2022, NewPoint assigned the Grand Ave Mortgage Agreement and Grand Ave Note to Plaintiff (the "Grand Ave Mortgage and Note Assignment") in a written Assignment of Security Instrument duly recorded in the Office of the City Register of the City of New York, under Control Number 2022000310152 on August 5, 2022. A true and correct copy of the Grand Ave Mortgage and Note Assignment is annexed as **Exhibit 23** and incorporated herein.

70. Plaintiff is in possession of the original Grand Ave Note, indorsed in blank, which is attached hereto as Exhibit 13. By virtue of Plaintiff's possession of the original Grand Ave Note, as well as the Grand Ave Mortgage and Note Assignment, Plaintiff became, and is still, the mortgagee on and owner and holder of the Grand Ave Note and the Grand Ave Mortgage Agreement.

71. On or about July 26, 2022, NewPoint assigned certain "Collateral Agreements and Other Loan Documents" related to the Grand Ave Property to Plaintiff (the "Grand Ave Collateral Agreements Assignment"), which assigned agreements including the Grand Ave Loan Agreement, the Grand Ave Guaranty, and "[a]ny other documents executed in connection with the Mortgage Loan." A true and correct copy of the Grand Ave Collateral Agreements Assignment is annexed as **Exhibit 24** and incorporated herein.

## IV. Defaults, Fees, and Remedies, Including Foreclosure, Under the Loan Documents

72. Under Section 14.01(a)(1) of the Loan Agreements, any failure by the Borrowers to pay or deposit when due any amount required by their respective Notes, Mortgage Agreements, or any other Loan Documents is deemed an automatic "Event of Default." Exs. 2, 6, 10, 14. This includes failure to pay their Monthly Payments.

73. Under Section 5 of the Mortgage Agreements, following an Event of Default, the Lender may declare the entire amount of indebtedness immediately due and payable, may institute judicial foreclosure proceedings, is entitled to the *ex parte* appointment of a receiver, and may invoke any other remedies permitted by the Loan Documents and New York law. Mortgage Agreements, Exs. 3, 7, 11, 15. The Lender is also entitled to:

> [A]ll expenditures and expenses authorized by applicable law and all other expenditures and expenses which may be paid or incurred by or on behalf of Lender for reasonable legal fees, appraisal fees, outlays for documentary and expert evidence, stenographic charges and publication costs; . . . and [] all additional advances made pursuant to Section 8303 of the Civil Practice Law and Rules of the State of New York and costs . . . of procuring all abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Lender may deem reasonably necessary either to prosecute any suit or to evidence the true conditions of the title to or the value of the Mortgaged Property to bidders at any sale which may be held in connection with the exercise of Lender's rights and remedies under the Loan Documents. All expenditures and expenses of the nature mentioned in this Section 5, and such other expenses and fees as may be incurred in the protection of the Mortgaged Property and rents and income therefrom and the maintenance of the lien of this Security Instrument, including the fees of any attorney employed by Lender in any litigation or proceedings affecting this Security Instrument, the Note, the other Loan Documents, or the Mortgaged Property, including bankruptcy proceedings, [or] any Foreclosure Event . . . shall be additional Indebtedness and shall be immediately due and payable by Borrower, with interest thereon at the Default Rate until paid.

*Id.* at § 5(d).

74. Under Section 2.02(d)(1)(A) of the Loan Agreements, if any principal, interest, or other indebtedness due under the Loan Documents remains past due for thirty (30) days or more, then interest on such unpaid amount(s) shall accrue from the date payment is due at the "<u>Default Rate</u>." Exs. 2, 6, 10, 14. The Default Rate is defined in the Loan Agreements to be the lesser of "the sum of the Interest Rate plus four (4) percentage points" or "the maximum interest rate which may be collected from Borrower under applicable law." *Id.* at Schedule 1.

*75.* Additionally, under Section 2.02(c) of the Loan Agreements, if any amount payable under the Loan Agreement is not received by Lender within ten days of the due date, the Borrowers

are required to pay Lender a late charge. *Id.* The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate. *See id.*

76. Furthermore, pursuant to the Mortgage Agreements, the Borrowers agreed to pay all Indebtedness, including all Enforcement Costs (as such terms are defined in Loan Documents), which include, among other things:

> All expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any Event of Default under the Loan Agreement or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Agreement or any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event) or judicial or non-judicial foreclosure proceeding, to the extent permitted by law.

Mortgage Agreements, Exs. 3, 7, 11, 15 § 1.

77. Finally, under Section 3(g) of the Mortgage Agreements, if the Rents are not sufficient to meet the Lender's costs of taking control and managing the Property, as defined therein, the Lender is entitled to have any additional funds it expends to operate the Property added to the indebtedness due under the Loan Documents. *Id.*

## V. <u>Failure to Make Monthly Payments Due and Corresponding Events of Default</u>

78. On November 1, 2025, the West 184th St Borrower failed to pay the West 184th St Monthly Payment due as required under the Loan Documents. Such failure to pay the amount due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

79. On December 1, 2025, the West 184th St Borrower failed to pay the West 184th St Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

80. On January 1, 2026, the West 184th St Borrower failed to pay the West 184th St Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

81. On February 1, 2026, the West 184th St Borrower failed to pay the West 184th St Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

82. On November 1, 2025, the West 228th St Borrower failed to pay the West 228th St Monthly Payment due as required under the Loan Documents. Such failure to pay the amount due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

83. On December 1, 2025, the West 228th St Borrower failed to pay the West 228th St Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

84. On January 1, 2026, the West 228th St Borrower failed to pay the West 228th St Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

85. On February 1, 2026, the West 228th St Borrower failed to pay the West 228th St Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts

due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

86. On November 1, 2025, the University Ave Borrower failed to pay the University Ave Monthly Payment due as required under the Loan Documents. Such failure to pay the amount due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

87. On December 1, 2025, the University Ave Borrower failed to pay the University Ave Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

88. On January 1, 2026, the University Ave Borrower failed to pay the University Ave Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

89. On February 1, 2026, the University Ave Borrower failed to pay the University Ave Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

90. On November 1, 2025, the Grand Ave Borrower failed to pay the Grand Ave Monthly Payment due as required under the Loan Documents. Such failure to pay the amount due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

91. On December 1, 2025, the Grand Ave Borrower failed to pay the Grand Ave Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

92. On January 1, 2026, the Grand Ave Borrower failed to pay the Grand Ave Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

93. On February 1, 2026, the Grand Ave Borrower failed to pay the Grand Ave Monthly Payment due as required under the Loan Documents. Such failure to pay the amounts due constituted an Event of Default under the Loan Documents, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

## VI. Demand for Payment and Acceleration of Loan and Termination of License to Collect Rents

94. As of the filing of this Complaint, the Borrowers still have not paid their Monthly Payments, as required under the Loan Documents, that have been due and owing since November 1, 2025.

95. On February 2, 2026, Plaintiff sent a letter to each of the Borrowers notifying them that they were in default of their respective obligations under the Loan Documents by virtue of their failure to pay the Monthly Payments due (the "Demand Letters").

96. Plaintiff also gave the West 184th St Borrower, Grand Ave Borrower, and University Ave Borrower notice of and sixty days to cure certain liens accrued on their respective Properties by the ECB, which were identified based on a search of the ECB's website.

97. The Demand Letters also advised that each of the Loans had been accelerated. A true and correct copy of the Demand Letters to CAP 41 W 184 Property Owner LLC, CAP 151 W 228 Property Owner LLC, CAP 2291 Universe St Property Owner LLC, CAP 2322 Grand Ave Property Owner LLC are annexed as **Exhibits 25 - 28**, respectively, and incorporated herein.

98. In the Demand Letters, Plaintiff demanded that the Borrowers immediately pay all of the outstanding principal and accrued and unpaid interest under their respective Notes, in their entirety, together with all applicable charges and all costs, expenses, and attorneys' fees incurred by Plaintiff. Exs. 25–28. Plaintiff notified the Borrowers that, by reason of the defaults, Plaintiff may immediately institute foreclosure proceedings under the Mortgages and may otherwise exercise any and all other rights and remedies enumerated in the Loan Documents or otherwise available at law or in equity. These rights and remedies included, without limitation, the appointment of a receiver over the Properties. *Id.*

99. Additionally, in the Demand Letters, Plaintiff gave notice that each Borrower's license to collect Rents at each respective Property was terminated, and that Plaintiff is now entitled to all Rents as they become due and payable. *Id*. The Demand Letters went on to demand that any Rents collected by the Borrowers after the occurrence of the Events of Default on November 1, 2025 be received and held by the Borrowers in trust for the benefit of Plaintiff, and only applied to "bona fide current operating expenses to third parties in connection with the operation of the property with excess paid to Fannie Mae, to be applied in accordance with the Loan Documents." *Id.*

100. On April 24, 2026, shortly after identifying an additional default under the Loan Documents regarding unpaid water charges, Plaintiff sent out additional demand letters (the "Additional Demand Letters") to the Borrowers, giving them sixty days to cure their defaults. A

true and correct copy of the Additional Demand Letters to CAP 41 W 184 Property Owner LLC, CAP 151 W 228 Property Owner LLC, CAP 2291 Universe St Property Owner LLC, and CAP 2322 Grand Ave Property Owner LLC are annexed as **Exhibits 29 - 32**, respectively, and incorporated herein.

101. As of the filing of this Complaint, the Borrowers have not cured the ECB lien violations, satisfied the unpaid water charges, nor turned over any Rents or security deposits to Plaintiff.

## VII. Junior Liens on the Properties

102. Under Section 11.02(a) of the Loan Agreements, the Borrowers "shall not permit the grant, creation, or existence of any Lien, whether voluntary, involuntary, or by operation of law, on all or any portion of the Mortgaged Property (including any voluntary, elective, or non-compulsory tax lien or assessment pursuant to a voluntary, elective, or non-compulsory special tax district or similar regime)." Exs. 2, 6, 10, 14.

103. Furthermore, pursuant to Sections 6.02(e)(1) and (4) of the Loan Agreements, the Borrowers are obligated to comply with all laws, ordinances, statutes, rules, and regulations of any governmental authority and all recorded lawful covenants and agreements relating to the Properties, and to maintain records sufficient to demonstrate compliance with Section 6.02(e)(1). *Id.*

104. As set forth in the Additional Demand Letters, each of the Borrowers has failed to pay their water and wastewater bills for their respective Property. As of the filing of the Complaint, the West 184th St Borrower has unpaid water and wastewater bills in the amount of $62,308.16; the West 228th St Borrower has unpaid water and wastewater bills in the amount of $83,061.09;

the University Ave Borrower has unpaid water and wastewater bills in the amount of $41,846.00; and the Grand Ave Borrower has unpaid water and wastewater bills in the amount of $61,374.30.

105. Pursuant to Section 11-301 of the New York City Administrative Code, unpaid water and wastewater charges constitute a lien on the real property.

106. According to public database searches, the ECB has issued many violations against the West 184th St, West 228th St, 2291 University Ave, and 2322 Grand Ave Properties, many of which have ripened into judgments that have been docketed against the respective Properties, and all of which are junior to Plaintiff's respective mortgage lien against such Property. Plaintiff has named the New York City Environmental Control Board as a defendant accordingly. A true and correct copy of the violations on the ECB website as of the date of filing is attached as **Exhibit 33.**

107. Specifically, the ECB has issued the following violations against the West 184th St Property. These violations carry an aggregate fine of $1,821.20.

| Date of Violation | Violation Description | Total Amount Due ($USD) |
|---|---|---|
| 05/20/2023 | Improper disposal--bedding 1st occurrence | $210.60 |
| 05/21/2023 | Storage of receptacles (placed out prior to 6pm) | $210.60 |
| 01/03/2025 | Fail to eliminate rodent infestation shown by active rodent signs 1st | $600.00 |
| 07/15/2025 | Fail to eliminate rodent infestation shown by active rodent signs 1st | $600.00 |
| 04/23/2026 | Fail to recycle organic waste (9 or more dwelling units) 1st | $100.00 |
| 05/14/2026 | Fail to recycle organic waste (9 or more dwelling units) 1st | $100.00 |

108. The ECB has issued the following violation against the West 228th St Property. This violation carries an aggregate fine of $100.00:

| Date of Violation | Violation Description | Total Amount Due ($USD) |
|---|---|---|
| 04/13/2026 | Failure to source separate residential recyclables(9+ Dwelling units) | $100.00 |

109. The ECB has issued the following violations against the 2291 University Ave Property. These violations carry an aggregate fine of $26,121.91.

| Date of Violation | Violation Description | Total Amount Due ($USD) |
|---|---|---|
| 06/04/2023 | Uncovered receptacles 1st occurrence | $213.19 |
| 06/08/2023 | Uncovered receptacles 1st occurrence | $213.19 |
| 07/31/2023 | Storage of receptacles (placed out prior to 8pm without a receptacle) | $210.60 |
| 01/02/2024 | Spillage from a receptacle 1st offense | $291.42 |
| 01/02/2024 | Spillage from a receptacle 1st offense | $291.42 |
| 03/01/2024 | Spillage from a receptacle 1st offense | $287.66 |
| 03/28/2024 | Spillage from a receptacle 1st offense | $285.75 |
| 06/03/2024 | Storage of receptacles (placed out prior to 8pm without a receptacle) | $196.06 |
| 12/05/2024 | Work without a permit | $6,675.34 |
| 09/04/2025 | Fail to eliminate rodent infestation shown by active rodent signs 1st | $600.00 |
| 09/20/2025 | Recyclables placed for collection with non-recyc(9+ dwelling units) | $100.84 |
| 10/08/2025 | Work without a permit | $10,157.81 |
| 10/08/2025 | Fail to comply w commissioner order to file cert of correction w dob | $6,348.63 |
| 04/08/2026 | Storage of receptacles (placed out prior to 8pm without a receptacle) | $50.00 |
| 04/25/2026 | Fail to recycle organic waste (9 or more dwelling units) 1st | $100.00 |
| 05/09/2026 | Fail to recycle organic waste (9 or more dwelling unites) 1st | $100.00 |

110. The ECB has issued the following violations against the 2322 Grand Ave Property. These violations carry an aggregate fine of $6,147.33.

| Date of Violation | Violation Description | Total Amount Due ($USD) |
|---|---|---|
| 03/30/2023 | Recyclables placed for collection with non-recyc(9+ dwelling units) | $117.33 |
| 03/31/2023 | Fail to eliminate conditions conducive to rodent-debris,vegetation 1st | $300.00 |
| 03/31/2023 | Fail to eliminate rodent infestation shown by active rodent signs 1st | $300.00 |
| 03/27/2024 | Fail to eliminate conditions conducive to rodent-debris,vegetation 1st | $600.00 |
| 03/27/2024 | Fail to eliminate rodent infestation shown by active rodent signs 1st | $600.00 |
| 08/27/2024 | Fail to eliminate rodent infestation shown by active rodent signs 2nd | $1,200.00 |
| 01/07/2025 | Fail to eliminate rodent infestation shown by active rodent signs 3rd | $2,000.00 |
| 09/29/2025 | Fail to eliminate rodent infestation shown by active rodent signs 1st | $600.00 |
| 04/01/2026 | Fail to eliminate rodent infestation shown by active rodent signs 1st | $330.00 |
| 04/11/2026 | Fail to recycle organic waste (9 or more dwelling units) 1st | $100.00 |

111. The incurrence of the ECB lien violations and the unpaid water charges, which were not consented to by Plaintiff and are not otherwise permitted by the Loan Documents, are "Transfers" under the Loan Agreements which constitute automatic Events of Default under Section 14.01(a)(6) of the Loan Agreements.

112. The incurrence of the lien violations and the unpaid water charges additionally triggers full recourse liability for the Borrowers and Mr. Rubin as Guarantor under Section 3.02(b)(2) of the Loan Agreements and Section 3 of the Guaranties.

## VIII. <u>Additional Municipal Violations</u>

113. Pursuant to Sections 6.02(e)(1) and (4) of the Loan Agreements, the Borrowers are obligated to comply with all laws, ordinances, statutes, rules, and regulations of any governmental

authority and all recorded lawful covenants and agreements relating to the Properties, and to maintain records sufficient to demonstrate compliance with Section 6.02(e)(1). Exs. 2, 6, 10, 14.

114. According to a recent search, the West 184th St Property is presently subject to 73 open code violations issued by the New York City Department of Housing Preservation and Development (the "HPD"). In addition, the West 184th St Property is presently subject to 1 open code violation issued by the New York City Department of Buildings (the "DOB").

115. According to a recent search, the West 228th St Property is presently subject to 16 open code violations issued by the HPD. In addition, the West 228th St Property is presently subject to 1 open code violation issued by the DOB.

116. According to a recent search, the University Ave Property is presently subject to 122 open code violations issued by the HPD. In addition, the University Ave Property is presently subject to 3 open code violations issued by the DOB.

117. According to a recent search, the Grand Ave Property is presently subject to 66 open code violations issued by the HPD.

118. The existence of these open violations constitutes defaults under Section 6.02(e)(1) of the Loan Agreements, and to the extent they have ripened or will ripen into liens, they will also be defaults under Section 11.02(a) of the Loan Agreements. *See* Exs. 2, 6, 10, 14.

## IX. Financial Reporting Defaults

119. Under Section 8.02(b) of the Loan Agreements, the Borrowers agreed to furnish certain "true, complete, and accurate" financial documents in "such form and with such detail as Lender reasonably requires." *See* Exs. 2, 6, 10, 14. These certain financial documents included both ***quarterly*** and ***annual*** statements of income and expense and rent rolls (the "Financial Reporting Documents"), with quarterly reporting due within forty-five (45) days after the end of

the quarter, and annual reporting due within one hundred twenty (120) days after the end of the year.

120. The West 184th St Borrower failed to comply with this covenant by not submitting the required Financial Reporting Documents for Q1 2025, Q2 2025, Q3 2025, Q1 2026, Year End 2024, and Year End 2025.

121. The West 228th St Borrower failed to comply with this covenant by not submitting the required Financial Reporting Documents for Q1 2025, Q2 2025, Q3 2025, Q1 2026, Year End 2024, and Year End 2025.

122. The University Ave Borrower failed to comply with this covenant by not submitting the required Financial Reporting Documents for Q1 2025, Q2 2025, Q3 2025, Q1 2026, Year End 2024, and Year End 2025.

123. The Grand Ave Borrower failed to comply with this covenant by not submitting the required Financial Reporting Documents for Q1 2025, Q2 2025, Q3 2025, Q1 2026, Year End 2024, and Year End 2025.

124. On or about February 2, 2026, Fannie Mae provided notice to the West 184th St Borrower, West 228th St Borrower, University Ave Borrower, and Grand Ave Borrower via the Demand Letters of their failure to provide the missing Financial Reporting Documents and demanded this failure be cured. *See* Exs. 25-28.

125. As of the filing of this Complaint, no Borrower has provided any missing Financial Reporting Documents. Events of Default have therefore occurred pursuant to Section 14.01(c)(1) of the Loan Agreements, entitling Plaintiff to exercise all its rights and remedies under the Loan Documents.

**X. <u>Aspen Judgment</u>**

126. According to a recently issued title report for the West 228th St Property, on November 14, 2025, the Supreme Court of the State of New York, New York County, entered a $30,019.18 judgment in favor of Aspen and against the previous owner of the West 228th St Property, 151 West 228 LLC, under Index No. 655789/2023. A true and correct copy of the judgment is annexed as **Exhibit 34**.

127. The underlying action was commenced—and the order was docketed—years after 151 West 228 LLC sold the West 228th St Property pursuant to a deed recorded on or about July 21, 2017. Defendant Aspen thus has no right, title, lien, or interest in the West 228th St Property, and any such claim would be inferior to Plaintiff's mortgage.

**XI. <u>Receivership</u>**

128. Upon the occurrence of an Event of Default, the Borrowers acknowledged repeatedly in their respective Loan Documents that Plaintiff is entitled to the *ex parte* appointment of a receiver to oversee each respective Property. *See* Exs. 2, 6, 10, 14.

129. Section 7.02(a)(2) of the Loan Agreements states that the Borrowers shall "surrender possession of the Mortgaged Property, including all Leases and all security deposits and prepaid Rents, immediately upon appointment of a receiver or Lender's entry upon and taking of possession and control of the Mortgaged Property." *Id.*

130. Under Section 3(e) of the Mortgage Agreements, "if an Event of Default has occurred. . . Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in Section 3 . . . [and] Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver,

including the appointment of a receiver *ex parte*, if permitted by applicable law." Exs. 3, 7, 11, 15.

131. Under Section 3(e) of the Mortgage Agreements, the Borrowers further agreed to "shortened time consideration of a motion to appoint a receiver." *Id.*

132. Finally, under Section 3(e) of the Mortgage Agreements, the Borrowers further agreed that, "[i]mmediately upon appointment of a receiver . . . possession of the Mortgaged Property and all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property, and all security deposits and prepaid Rents, shall be surrendered to [the] Lender or the receiver, as applicable." *Id.*

## FIRST CAUSE OF ACTION

**(Foreclosure of the Mortgage and Deficiency Judgment as against CAP 41 W 184 Property Owner LLC, Michael Rubin, and the New York City Environmental Control Board)**

133. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-132 above as though fully set forth herein.

134. The West 184th St Borrower has committed multiple Events of Default under the Loan Documents. As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the Loan Documents, including foreclosure of the West 184th St Property.

135. The following amounts are due and owing under the West 184th St Loan Documents, no part of which has been paid by the West 184th St Borrower, although duly demanded: (a) the outstanding principal sum of $1,470,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since November 1, 2025; (c) late charges; and (d) rental payments and security deposits owed under the West 184th St Note and West 184th St Assignment of Rents to be determined. These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the West 184th

St Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the West 184th St Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the West 184th St Property.

136. Plaintiff has fulfilled all of its obligations under the West 184th St Loan Documents.

137. NewPoint has fulfilled all of its obligations under the West 184th St Loan Documents.

138. No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the West 184th St Loan Documents, or any part thereof.

139. The New York City Environmental Control Board has been made a defendant by virtue of its outstanding judgments against the West 184th St Property.

140. The Defendants John Doe # 1 through John Doe # 76 have been made defendants because they are or may be tenants or may be in possession of the West 184th St Property, or may be corporations or other entities or person who claim, or may claim, a lien against the West 184th St Property.

141. Any claim that any of the defendants in this action have on the West 184th St Property is subject and subordinate to the lien of Plaintiff evidenced by and described in the West 184th St Loan Documents.

142. Plaintiff seeks a judgment, as more fully set forth below, (i) appointing a receiver to manage and operate the West 184th St Property, (ii) foreclosing the West 184th St Mortgage on the West 184th St Property, and (iii) awarding Plaintiff a money judgment against the West 184th

St Borrower and Michael Rubin for any remaining indebtedness due and under the West 184th St Loan Documents following the sale of the West 184th St Property.

143. Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the West 184th St Property should be sold subject to the following:

(a) any state of facts that an inspection of the premises would disclose;

(b) any state of facts that an accurate survey of the premises would show;

(c) covenants, restrictions, easements, and public utility agreements of record, if any;

(d) building and zoning ordinances of the municipality in which the West 184th St Property is located and possible violations of same;

(e) any rights of tenants or persons in possession of the West 184th St Property;

(f) any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale; and

(g) prior lien(s) of record, if any.

144. Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by the West 184th St Borrower after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## SECOND CAUSE OF ACTION

**(Foreclosure of the Mortgage and Deficiency Judgment as against CAP 151 W 228 Property Owner LLC, Michael Rubin, Aspen Specialty Insurance Company, and the New York City Environmental Control Board)**

145. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-132 above as though fully set forth herein.

146. The West 228th St Borrower has committed multiple Events of Default under the Loan Documents. As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the Loan Documents, including foreclosure of the West 228th St Property.

147. The following amounts are due and owing under the West 228th St Loan Documents, no part of which has been paid by the West 228th St Borrower, although duly demanded: (a) the outstanding principal sum of $2,004,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since November 1, 2025; (c) late charges; and (d) rental payments and security deposits owed under the West 228th St Note and West 228th St Assignment of Rents to be determined. These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the West 228th St Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the West 228th St Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the West 228th St Property.

148. Plaintiff has fulfilled all of its obligations under the West 228th St Loan Documents.

149. NewPoint has fulfilled all of its obligations under the West 228th St Loan Documents.

150. No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the West 228th St Loan Documents, or any part thereof.

151. The New York City Environmental Control Board has been made a defendant by virtue of its outstanding judgments against the West 228th St Property.

152. The Aspen Specialty Insurance Company has been made a defendant out of an abundance of caution by virtue of its judgment against the prior owner 151 West 228 LLC that

appears to have been mistakenly docketed against the West 228th St Property after the recording of Plaintiff's mortgage lien.

153. The Defendants John Doe # 1 through John Doe # 76 have been made defendants because they are or may be tenants or may be in possession of the West 228th St Property, or may be corporations or other entities or person who claim, or may claim, a lien against the West 228th St Property.

154. Any claim that any of the defendants in this action have on the West 228th St Property is subject and subordinate to the lien of Plaintiff evidenced by and described in the West 228th St Loan Documents.

155. Plaintiff seeks a judgment, as more fully set forth below, (i) appointing a receiver to manage and operate the West 228th St Property, (ii) foreclosing the West 228th St Mortgage on the West 228th St Property, and (iii) awarding Plaintiff a money judgment against the West 228th St Borrower and Michael Rubin for any remaining indebtedness due and under the West 228th St Loan Documents following the sale of the West 228th St Property.

156. Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the West 228th St Property should be sold subject to the following:

(a) any state of facts that an inspection of the premises would disclose;

(b) any state of facts that an accurate survey of the premises would show;

(c) covenants, restrictions, easements, and public utility agreements of record, if any;

(d) building and zoning ordinances of the municipality in which the West 228th St Property is located and possible violations of same;

(e) any rights of tenants or persons in possession of the West 228th St Property;

(f) any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale; and

(g) prior lien(s) of record, if any.

157. Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by the West 228th St Borrower after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## THIRD CAUSE OF ACTION

**(Foreclosure of the Mortgage and Deficiency Judgment as against CAP 2291 Universe St Property Owner LLC, Michael Rubin, and the New York City Environmental Control Board)**

158. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-132 above as though fully set forth herein.

159. The University Ave Borrower has committed multiple Events of Default under the Loan Documents. As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the Loan Documents, including foreclosure of the University Ave Property.

160. The following amounts are due and owing under the University Ave Loan Documents, no part of which has been paid by the University Ave Borrower, although duly demanded: (a) the outstanding principal sum of $1,261,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since November 1, 2025; (c) late charges; and (d) rental payments and security deposits owed under the University Ave Note and University Ave Assignment of Rents to be determined. These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the University Ave Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the University Ave Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports,

statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the University Ave Property.

161. Plaintiff has fulfilled all of its obligations under the University Ave Loan Documents.

162. NewPoint has fulfilled all of its obligations under the University Ave Loan Documents.

163. No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the University Ave Loan Documents, or any part thereof.

164. The New York City Environmental Control Board has been made a defendant by virtue of its outstanding judgments against the University Ave Property.

165. The Defendants John Doe # 1 through John Doe # 76 have been made defendants because they are or may be tenants or may be in possession of the University Ave Property, or may be corporations or other entities or person who claim, or may claim, a lien against the University Ave Property.

166. Any claim that any of the defendants in this action have on the University Ave Property is subject and subordinate to the lien of Plaintiff evidenced by and described in the University Ave Loan Documents.

167. Plaintiff seeks a judgment, as more fully set forth below, (i) appointing a receiver to manage and operate the University Ave Property, (ii) foreclosing the University Ave Mortgage on the University Ave Property, and (iii) awarding Plaintiff a money judgment against the University Ave Borrower and Michael Rubin for any remaining indebtedness due and under the University Avenue Loan Documents following the sale of the University Avenue Property.

168. Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the University Ave Property should be sold subject to the following:

(a) any state of facts that an inspection of the premises would disclose;

(b) any state of facts that an accurate survey of the premises would show;

(c) covenants, restrictions, easements, and public utility agreements of record, if any;

(d) building and zoning ordinances of the municipality in which the University Ave Property is located and possible violations of same;

(e) any rights of tenants or persons in possession of the University Ave Property;

(f) any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale; and

(g) prior lien(s) of record, if any.

169. Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by the University Ave Borrower after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

**FOURTH CAUSE OF ACTION**

**(Foreclosure of the Mortgage and Deficiency Judgment as against CAP 2322 Grand Ave Property Owner LLC, Michael Rubin, and the New York City Environmental Control Board)**

170. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-132 above as though fully set forth herein.

171. The Grand Ave Borrower has committed multiple Events of Default under the Loan Documents. As a result of the Events of Default, Plaintiff is entitled to exercise all rights and remedies under the Loan Documents, including foreclosure of the Grand Ave Property.

172. The following amounts are due and owing under the Grand Ave Loan Documents, no part of which has been paid by the Grand Ave Borrower, although duly demanded: (a) the outstanding principal sum of $1,947,000.00; (b) accrued but unpaid interest thereon, including interest accruing at the Default Rate since November 1, 2025; (c) late charges; and (d) rental payments and security deposits owed under the Grand Ave Note and Grand Ave Assignment of Rents to be determined. These sums are exclusive of other costs and expenses Plaintiff has incurred and will incur in connection with exercising its rights under the Grand Ave Loan Documents during the pendency of this action, including tax payments, insurance premiums, advances to a receiver to protect and maintain the Grand Ave Property, attorneys' fees, expert witness fees, costs of investigations (including property condition assessments and environmental inspections), appraisals, costs of documentary evidence, abstracts, title reports, statutory costs, allowances made pursuant to Section 8303 of the Civil Practice Law and Rules, and any additional funds Plaintiff expends to operate the Grand Ave Property.

173. Plaintiff has fulfilled all of its obligations under the Grand Ave Loan Documents.

174. NewPoint has fulfilled all of its obligations under the Grand Ave Loan Documents.

175. No other action or proceeding has been brought at law or otherwise for the recovery of said sum secured by the Grand Ave Loan Documents, or any part thereof.

176. The New York City Environmental Control Board has been made a defendant by virtue of its outstanding judgments against the Grand Ave Property.

177. The Defendants John Doe # 1 through John Doe # 76 have been made defendants because they are or may be tenants or may be in possession of the Grand Ave Property, or may be corporations or other entities or person who claim, or may claim, a lien against the Grand Ave Property.

178. Any claim that any of the defendants in this action have on the Grand Ave Property is subject and subordinate to the lien of Plaintiff evidenced by and described in the Grand Ave Loan Documents.

179. Plaintiff seeks a judgment, as more fully set forth below, (i) appointing a receiver to manage and operate the Grand Ave Property, (ii) foreclosing the Grand Ave Mortgage on the Grand Ave Property, and (iii) awarding Plaintiff a money judgment against the Grand Ave Borrower and Michael Rubin for any remaining indebtedness due and under the Grand Avenue Loan Documents following the sale of the Grand Avenue Property.

180. Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, the Grand Ave Property should be sold subject to the following:

(a) any state of facts that an inspection of the premises would disclose;

(b) any state of facts that an accurate survey of the premises would show;

(c) covenants, restrictions, easements, and public utility agreements of record, if any;

(d) building and zoning ordinances of the municipality in which the Grand Ave Property is located and possible violations of same;

(e) any rights of tenants or persons in possession of the Grand Ave Property;

(f) any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale; and

(g) prior lien(s) of record, if any.

181. Plaintiff shall not be deemed to have waived, altered, released, or changed any demand made in this Complaint, as a result of any payment made by the Grand Ave Borrower after the commencement of this action, or any of the defaults mentioned herein, and such demands shall continue and remain effective.

## FIFTH CAUSE OF ACTION

**(Declaratory Relief that the Aspen Specialty Insurance Company Lien Is Void As Against the West 228th St Property)**

182. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-132 above as though fully set forth herein.

183. Defendant Aspen's judgment is against 151 West 228 LLC.

184. 151 West 228 LLC conveyed the premises of the West 228th St Property on or about July 18, 2017.

185. The Aspen judgment was entered in November 2025, well after 151 West 228 LLC conveyed its interest in the West 228th St Property.

186. An actual, present, and justiciable controversy exists between Plaintiff and Aspen concerning whether the judgment constitutes a lien or encumbrance against the West 228th St Property and, if so, its validity, priority, and enforceability as against Plaintiff and its Mortgage.

187. Under *Leonardo v. Siegal*, 542 N.Y.S.2d 25, 25 (App. Div. 1989), a judgment does not create a lien on real property owned by persons other than the judgment debtor, and it does not attach to property that the judgment debtor conveyed before the judgment was docketed in the county where the property is located.

188. 28 U.S.C. § 2201 empowers this Court to declare the rights and legal relations of the parties in the matter.

189. Under RPAPL § 1501(1), any person with an interest in real property is entitled to bring an action to compel the determination of any claim adverse to their interests.

190. Pursuant to 28 U.S.C. § 2201 and RPAPL § 1501, Plaintiff seeks a determination (a) declaring that Aspen's judgment does not constitute a lien or encumbrance against the West

228th St Property; and (b) permanently enjoining Aspen and all persons claiming by, through, or under it from asserting any lien, right, title, or interest in the Property based on the judgment.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff demands judgment as follows:

(a) That the defendants, and each of them, and all persons claiming under defendants, or any of them, subsequent to the commencement of this action and the filing of a notice of pendency thereof, be barred and foreclosed of and from all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Properties and each and every part and parcel thereof;

(b) That a receiver possessing such powers as those granted to him/her under the Mortgage Agreements and applicable law be appointed for the Properties;

(c) That the Properties may be decreed to be sold in one or more parcels according to law;

(d) That the monies arising from the sale of the Properties may be brought into Court;

(e) That the amount due to Plaintiff under the Loan Documents be adjudged, and that from the monies arising from the foregoing sales, Plaintiff be paid the amount due to it under the Loan Documents with interest to the time of such payment, the expenses of sale, and the costs and expenses of this action, including reasonable attorneys' fees and expenses, together with any monies which may be paid by Plaintiff for taxes, water and sewer charges and assessments, insurance premiums, and all other charges and liens thereon to be paid, with interest at the Default Rate upon such amounts from the dates of the respective payments and advances thereof, so far as the amounts of monies properly allocable thereto will pay the same;

(f) That the Borrowers and Michael Rubin may be adjudged to pay all amounts due and owing to Plaintiff following the sale of the Properties and distribution of the proceeds thereof;

(g) That Aspen's judgment does not constitute a lien or encumbrance against the West 228th St Property; and

(h) That Plaintiff be awarded such other and further relief as shall be just and equitable.

New York, New York
Dated: June 4, 2026

Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD**

By: *<u>/s/ Dean L. Chapman, Jr.</u>*
Dean L. Chapman, Jr.
One Bryant Park
New York, New York 10036
Telephone: (212) 872-8095
Facsimile: (212) 872-1002

*Counsel for Plaintiff Federal National Mortgage Association*